**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) Crim. No. 06-00071-ALL-SM |
| ELAINE A BROWN, and | ) |
| EDWARD LEWIS BROWN, | ) |
| | ) |
| Defendants. | ) |

<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

The United States of America submits this Sentencing Memorandum to address certain issues that may arise at the sentencing hearings of defendants Elaine A. Brown and Edward Lewis Brown and to apprise the Court of the recommendations that the government expects to make at the those hearings.  The sentencing hearings are scheduled for Tuesday, April 24, 2007.

**I.    <u>BACKGROUND</u>**

In a single indictment handed down on April 5, 2006, the defendants were charged with a number of income tax and structuring related offenses.  The indictment charged both defendants with one count of conspiracy to defraud the federal government (Count One) and one count of conspiracy to structure financial transactions to avoid the currency transaction reporting requirements (Count Fifteen).  The indictment further charged defendant Elaine Brown with five counts of evading federal income taxes (Counts Two through Six), eight counts of failing to collect federal payroll taxes from the wages of her

dental office workers (Counts Seven through Fourteen) and two substantive counts of structuring (Counts Sixteen and Seventeen). Defendant Edward Brown was charged with one substantive count of structuring (Count Seventeen).  Finally, the indictment contained a notice that the government was seeking the forfeiture of approximately $215,000 in cash and property involved in the alleged structuring offenses, including the defendants' residence in Plainfield, New Hampshire, and a professional building owned by the defendants in West Lebanon, New Hampshire.

On January 18, 2007, after approximately four days of hearing evidence from both the government and the defense, a jury returned verdicts in favor of the government on all counts.  With respect to the forfeiture provisions in the indictment, the jury returned a special verdict finding that (i) the total amount of the funds involved in the structuring offenses was $215,890.47; and (ii) of that amount, $27,997.13 and $42,840.16 involved the defendants' professional building and their residence, respectively.

## II.  THE PRESENTENCE INVESTIGATION REPORTS

The probation officer has completed final reports of presentence investigation for each of the defendants.  Using a total intended loss of more than $400,000 but not more than $1,000,000 (as established at trial) for the tax offenses, making appropriate adjustments for obstruction of justice on the part of each of the defendants and applying the grouping rules to account

for the structuring offenses, the probation officer properly determined that the Total Offense Level for each of the defendants is twenty-four.  Each of the defendants qualifies as Criminal History Category I and thus the reports properly find that the corresponding advisory Sentencing Guideline Range for each defendant is fifty-one to sixty-three months.

Although the defendants generally labeled the initial version of at least one of the presentence reports as inaccurate, they have not specifically objected to any of the reports' facts, legal conclusions or sentencing guideline calculations. [1]  For its part, the government has no objection to any of the facts, legal conclusions or sentencing guideline calculations in either final report, as supplemented by the government's April 13, 2007, letters attached thereto.  The facts on which the government will rely in seeking the sentences it recommends are in large part the facts set forth in the effectively undisputed presentence reports.

---

[1]      In a joint pleading dated April 2, 2007, the defendants asserted that, based upon "[w]hat little [they had] read" in a "few pages" of one of their reports, they had concluded that the reports were "so filled with misrepresentations, untruths, and presumptions, that, even if [they] cared to respond to all these items, [they] would not know where to begin."  From the defendants' joint pleading it is impossible to determine which defendant's report the few pages they read came from. The defendants have not otherwise responded to the presentence reports.

## III. UPWARD DEPARTURES AND UPWARD VARIANCES FROM THE SENTENCING GUIDELINE RANGE

### A.   Upward Departures

Upward departures are warranted on the ground that the defendants' conduct resulted in a significant disruption of governmental functions and on the ground that the defendants engaged in further criminal activities while fugitives from justice in this case.

### 1.   Disruption of Governmental Function

Under the Sentencing Guidelines, substantially disrupting a governmental function is a favored ground for an upward departure.  See U.S.S.G. § 5K2.7.  Section 5K2.7 of the Sentencing Guidelines provides that, "[i]f the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected."  Id.

As noted in the reports of presentence investigation, the defendants failed to show up on the fourth day of trial and, although Elaine eventually returned to see her trial through, they now have both retreated to their Plainfield residence.  They refuse to submit to the authority of the Court and repeatedly threaten that they will resist with deadly force any effort by the government to remove and apprehend them.  Not only does their conduct constitute a flagrant violation of their respective

conditions of release, but their actions have resulted in the significant disruption of a governmental function warranting an upward departure under Section 5K2.7.

The defendants' unannounced failure to appear for their fourth day of trial resulted in a substantial waste of trial resources and significantly inconvenienced a large number of civilian trial participants.  Dozens of jurors and witnesses rearranged their schedules, took time off from any family or work responsibilities and traveled to Concord that day to execute their respective civic duties.  The trial was continued due to the defendants' absence, and, unfortunately, that day not one of the witnesses had an opportunity to testify and the jury received absolutely no evidence.  Accordingly, all of the sacrifices the witnesses and jurors made to be at trial were rendered totally unnecessary by the defendants' failures to appear.

In addition, by retreating to their residence and repeatedly threatening violence against any lawful attempts to apprehend them, the defendants have put the government in a position where it has needed to develop special plans to take the defendants into custody and to develop and implement heightened security measures.  Such measures have required significant expenditures of government resources.  Finally, the defendants filed a frivolous lawsuit against the prosecutors and agents who directed the investigation of this case, creating personal and professional inconveniences for those officials and temporarily

diverting their attention from their substantive work.

Based upon all of the above, the government submits that there are both legal and factual bases for upward departures as to each of the defendants on the basis that they substantially disrupted a government function. [2]

### 2. Engaging in Further Criminal Activities while Fugitives

Engaging in further uncharged criminal activity while a fugitive from justice is grounds for a further upward departure from the otherwise applicable guideline sentencing range. See, e.g., United States v. Sarna, 28 F.3d 657, 66-63 (7th Cir. 1994). Defendants Elaine Brown and Edward Brown each engaged in criminal conduct since assuming fugitive status. For example, they both participated in inflicting $1000 or more in damages to government property when they removed and rendered irreparably inoperable defendant Elaine Brown's ankle bracelet. [3] There is therefore both a legal and factual basis for an upward departure in the defendants offense levels for continuing to engage in

---

[2] An upward departure would not present an issue of impermissible double-counting. The obstruction of justice enhancement under Section 3C1.1 of the Guidelines – which was already applied in determining the defendants' pre-departure offense levels – would apply regardless of whether there was in fact a disruption of the any governmental function. Accordingly, this departure is based upon facts not already taken into consideration in determining the total offense level. Cf. United States v. Moreno,367 F.3d 1, 3-5(1st Cir. 2004)(noting that the grounds for departure under § 5K2.7 were already accounted for in offense level for defendant's bail jumping).

[3] Other possible post flight offenses on which this type of upward departure against the defendants could be based include threatening wire communications, accessory after the fact and conspiracy.

criminal activity while on fugitive status.

**B.   Upward Variances**

Based upon multiple aggravating factors, the Court may vary upwards significantly from the sentences called for by the advisory Sentencing Guideline Ranges.  Such upward variances would be consistent with United States v. Booker, 453 U.S. 220 (2005) and 18 U.S.C. § 3553(a).  Under Booker, the Court may vary from the guidelines in imposing a sentence after consideration of the following sentencing factors:

(1)   the nature and circumstances of the offense and the history and the characteristics of the defendant [18 U.S.C. § 3553(a)(1)];

(2)   the need for the sentence imposed –

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [18 U.S.C. § 3553(a)(2)];

(3)   the kinds of sentences available [18 U.S.C. § 3553(a)(3)];

(4)   the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range [18 U.S.C. § 3553(a)(4) & (a)(5)];

(5)   the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct [18 U.S.C. § 3553(a)(6)]; and

> (6)   the need to provide restitution to any victims of the offense(s) [18 U.S.C. § 3553(a)(7)].

<u>Id</u>.

The First Circuit has held that, although the guidelines should not be characterized as presumptively reasonable or presumptively controlling, they remain – even post-<u>Booker</u> – an important consideration at sentencing.  <u>United States v. Jiminez-Beltre</u>, 440 F.3d 514, 518 (1st Cir. 2006).  Indeed, they cannot be considered "just another statutory factor," because the guidelines are the only integration of the multiple factors and were generally based upon the actual experiences of sentencing experts.  <u>Id</u>.  The First Circuit has adopted a procedure of first calculating the guideline sentencing range and then evaluating whether there any other factors that require a sentence above or below the range to satisfy a reasonableness standard.  <u>Jiminez-Beltre</u>, 440 F.3d 518-19. .

In this case, an upward variance from the Sentencing Guideline Range for each defendant is warranted based upon the defendants' history and characteristics, the nature and circumstances of the offenses and, particularly, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  Those aggravating factors are sufficiently compelling in this case that it would be unreasonable to impose a sentence that does not reflect some upward adjustment to account for the

their presence.  The aggravating circumstances demonstrating the need for upward variances for each of the defendants are as follows:

### 1.  Defendant Elaine Brown

#### a.  History and Characteristics of the Defendant

- Defendant Elaine Brown is a highly educated and successful businesswoman, who likely knew better than most in similar circumstances that her claimed tax views were wrong.  [Presentence Report, ¶¶ 9, and 103-05.]

- Defendant Elaine Brown forced to court to receive unemployment benefits a receptionist who could not continue to work for her after the former employer's husband accidentally killed himself trying to replicate a gun trick he learned about at paramilitary training for which he was recruited, and which was sponsored by, defendant Edward Brown.  Government's April 13 letter.[4]

#### b.  Nature and Circumstances of the Offense

- Defendants Elaine Brown and Edward Brown began to engage in the offenses of conviction after the Internal Revenue Service levied their bank account to satisfy a past tax debt on which they had failed to stay current. [Presentence Report, ¶ 10.]

- Defendant Elaine Brown ignored the advice of both the Internal Revenue Service and multiple tax professionals that she should not act on the highly unconventional views of the tax laws that she claimed to hold. [Presentence Report, ¶¶ 11-13,and 15.]

- The total tax loss used in the Sentencing Guideline calculation likely understates in a material way the amount of intended tax loss, as it does not include any tax loss associated with defendant Elaine Brown's failures to:

---

[4] The government offers this information mainly as rebuttal to the character evidence defendant Elaine Brown adduced at trial and the two character letters the Court has received during the sentencing process.

- file tax returns or collect payroll taxes in 2004 and 2005, the amounts of which could be reasonably estimated by extrapolation [Presentence Report, ¶¶ 17, 18 and 32]; or

- pay State of New Hampshire business taxes, which the presentence report suggests amount to several hundred thousand dollars. [Presentence Report, ¶ 84.]

- The loss amount used in the presentence report is also likely understated because it does not include any interest, fines or penalties that might have been imposed against employees whose payroll taxes defendant Elaine Brown did not collect and whose wages defendant Elaine Brown did not report to the Internal Revenue Service. [Presentence Report, ¶ 33].

- Defendant Elaine Brown put the employees from whom she did not collect payroll taxes or report income at significant risk of adverse legal and financial consequences in the form of Internal Revenue Service fines, penalties, interest and legal action. [Presentence Report, ¶ 19.]

  **c.  Need for Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses**

- Due to the structure of the loss table, the tax loss associated with defendant Elaine Brown's failure to collect payroll taxes did not affect the guideline calculation, and therefore, unless that loss is taken into account in some other way during the sentencing process, defendant Elaine Brown will not be punished for  that separate and independent offense. [Presentence Report, ¶ 33.]

- Until pushed to the brink of losing their home and business properties, defendants Elaine Brown and Edward Brown also stopped paying the school portions of their local property taxes in both Plainfield and West Lebanon based upon their claim that the schools were teaching subjects that, according to the Browns, the state constitution precluded publicly funded schools from teaching. [Presentence Report, ¶ 85.]

- Defendants Elaine Brown and Edward Brown intentionally and routinely disregarded other laws such as those requiring firearm licensing, building permits and dog licenses, illegal acts about which defendant Edward Brown publicly boasted.  [Presentence Report, ¶ 86.]

- During the investigation that led to this prosecution, defendants Elaine Brown and Edward Brown filed a meritless lawsuit against the undersigned Assistant U.S. Attorney, the United States Attorney for the District of New Hampshire and the two law enforcement agents leading the investigation.  [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- Defendant Elaine Brown engaged in multiple acts of obstruction of justice, including but not limited to willfully and knowingly failing to appear during the middle of trial and testifying falsely at trial. (In her trial testimony, defendant Elaine Brown denied one of the essential elements of the charged offenses – willfulness.  The jury's guilty verdicts of guilty on the offenses on the counts requiring that element the must have made the implicit but necessary finding, *beyond a reasonable doubt*, that defendant Elaine Brown testified falsely.) [Presentence Report, ¶¶ 27 and 28.]

- In multiple public statements, defendant Elaine Brown affirmatively disclaimed responsibility for her crimes, instead blaming her convictions on, among others, the Court, the jury, the prosecution and the Internal Revenue Service and she continues to maintain that she has broken no laws. [Presentence Report ¶¶ 29 and 31; Government's supplemental letter, dated April 13, 2007, and defendants Elaine Brown's and Edward Brown's joint response to presentence report dated April 3, 2007.]

- In connection with her request for post-conviction release, defendant Elaine Brown advised this Court that her son – who she had proposed as a potential third party custodian – did not share her claimed beliefs about the tax laws when in fact he apparently posted on an internet bulletin board a message proclaiming her views as correct and urging others to follow her and defendant Edward Brown's example. [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- Defendant Elaine Brown has flouted the conditions of her post-conviction release, when, even after orally representing to this Court that she would not do so, she left the third party custody of her son and joined defendant Edward Brown in Plainfield, New Hampshire. [Presentence Report ¶¶ 4 and 29; Government's supplemental letter, dated April 13, 2007, and defendants Elaine Brown's and Edward Brown's joint response to presentence report dated April 3, 2007.]

- Defendant Elaine Brown removed an electronic ankle bracelet she was required to wear as a condition of her post-conviction release and inflicted more than $1000 in damage to the ankle bracelet – government property – by rendering it permanently inoperable. [Presentence Report ¶ 29; Government's supplemental letter, dated April 13, 2007.]

- Since her conviction, defendant Elaine Brown has publicly urged others to stop paying their taxes based upon the same or similar theories of the tax laws she raised without success at trial.

- Defendant Elaine Brown has participated in interviews and other public statements in which she and defendant Edward  Brown have made express or implicit violent threats against certain specific public officials and others involved in their anticipated capture, requiring the government to develop and implement, at substantial expense to law abiding federal taxpayers, special security plans and plans to apprehend defendants Elaine Brown and Edward Brown.  [Presentence Report; ¶ 30, Government's supplemental letter, dated April 13, 2007.]

- Despite the substantial tax losses attributable to her offenses and her frequent claims that she is not a citizen subject to the laws of the United States, defendant Elaine Brown has applied for:

  - and, since her conviction has received, Social Security benefits in the amount of more than $1300 per month [Presentence Report; ¶ 109.]; and

  - reimbursement from the federal government under federal law of expenses she anticipated incurring in this case.

2.    **Edward Lewis Brown**

a.    **History and Characteristics of the Defendant**

- Defendant Edward Brown displays a badge resembling the shield of the U.S. Marshall on his belt and on his personal vehicles but he is not a law enforcement officer.  [Presentence Report; ¶¶ 85,89 and 90.]

- Defendant Edward Brown has been quoted in newspapers stating that he is going to kill as many government officials as he can and that "there's going to be a lot of hanging of government officials."  [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- During a telephone conversation with a State of New Hampshire Department of Revenue Administration employee about defendant Elaine Brown's state business tax liaibilties, defendant Edward Brown asked the state employee where he would be "when the bullets started to fly." [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

b.    **Nature and Circumstances of the Offense**

- Defendants Elaine and Edward Brown began to engage in the offenses of conviction after the Internal Revenue Service levied their bank account to satisfy a past tax debt on which they had failed to stay current. [Presentence Report, ¶ 10.]

- Defendant Edward Brown ignored the advice of both the Internal Revenue Service and multiple tax professional who told her that she should not act on the highly unconventional views of the tax laws she claimed to hold.  [Presentence Report, ¶¶ 11-13,and 15.]

- The total tax loss used in the Sentencing Guideline calculation likely understates in a material way the amount of intended tax loss, as it does not include any tax loss associated with defendant Elaine Brown's failures to:

  - file tax returns or collect payroll taxes in 2004 and 2005, the amounts of which could be reasonably estimated by extrapolation [Presentence Report, ¶¶ 17, 18 and 32]; or

- pay State of New Hampshire business taxes, which the presentence report suggests amount to several hundred thousand dollars.  [Presentence Report, ¶ 69].

- The loss amount used in the presentence report is also likely understated because it does not include any interest, fines or penalties that might have been imposed against employees whose payroll taxes defendant Elaine Brown did not collect and whose wages defendant Elaine Brown did not report to the Internal Revenue Service.  [Presentence Report, ¶ 33.]

- Defendant Elaine Brown put the employees from whom she did not collect payroll taxes or report income at significant risk of adverse legal and financial consequences in the form of Internal Revenue Service fines, penalties, interest and legal action. [Presentence Report, ¶ 19.]

   **c.  Need for Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses**

- Due to the structure of the loss table, the tax loss associated with defendant Elaine Brown's failure to collect payroll taxes did not affect the guideline calculation, and therefore, unless that loss is taken into account in some other way during the sentencing process, defendant Elaine Brown will not be punished for  that separate and independent offense. [Presentence Report, ¶ 33.]

- Defendant Edward Brown, even knowing he was the subject of a criminal investigation, told law enforcement authorities that he would not pay the federal income tax.  [Presentence Report, ¶ 24.]

- Until pushed to the brink of losing their home and business properties, defendants Elaine Brown and Edward Brown also stopped paying the school portions of their local property taxes in both Plainfield and West Lebanon based upon their claim that the schools were teaching subjects that, according to the Browns, the state constitution precluded publicly funded schools from teaching.  [Presentence Report, ¶ 70.]

- Defendants Elaine Brown and Edward Brown intentionally and routinely disregarded other laws such as those requiring firearm licensing, building permits and dog licenses, illegal acts about which defendant Edward Brown has publicly boasted. [Presentence Report, ¶ 71.]

- During the investigation that led to this prosecution, defendants Elaine Brown and Edward Brown filed a meritless lawsuit against the undersigned Assistant U.S. Attorney, the United States Attorney for the District of New Hampshire and the two law enforcement agents leading the investigation. [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- Defendant Edward Brown engaged in obstruction of justice, including but not limited to willfully and knowingly absenting himself from the proceedings by retreating to his residence where he remains to this day. [Presentence Report, ¶ 27.]

- Defendant Edward Brown assisted and comforted defendant Elaine brown when she joined him at their Plainfield property in violation of her bail conditions. [Presentence Report, ¶ 27 and 29.]

- In multiple public statements, defendant Edward Brown affirmatively disclaimed responsibility for his offenses, instead blaming his convictions on, among others, the Court, the jury, the prosecution and the Internal Revenue Service. [Presentence Report, Government's supplemental letter, dated April 13, 2007, and defendants Elaine Brown's and Edward Brown's joint response to presentence report dated April 3, 2007.]

- Defendant Edward Brown assisted defendant Elaine Brown in removing an electronic ankle bracelet she was required to wear as a condition of her post-conviction release and inflicted more than $1000 in damage to the ankle bracelet – government property – by rendering it permanently inoperable. [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- Since his conviction, defendant Edward Brown has publicly urged others to stop paying their taxes based upon the same or similar theories of the tax laws she raised without success at trial. [Presentence Report, ¶ 30.]

- Defendant Edward Brown has made numerous public statements in which he has made express or implicit violent threats against certain specific public officials and others he anticipates may try to apprehend him, requiring the government to develop and implement, at substantial expense to law abiding federal taxpayers, special security plans and plans to apprehend defendants Elaine Brown and Edward Brown. [Presentence Report, ¶ 30, Government's supplemental letter, dated April 13, 2007.]

- In declining to submit to a presentence interview, Brown said that he neither recognizes nor respects the federal court. [Presentence Report, ¶ 77.]

- In November 2006, weeks before he argued at trial that he was not subject to federal jurisdiction defendant Edward brown wrote a letter to state tax authorities that his domicile was a federal enclave, subject exclusively to federal jurisdiction and that the state thus had no jurisdiction to tax him [Presentence Report, Government's supplemental letter, dated April 13, 2007.]

- Defendant Edward Brown has been seen wearing a firearm in violation of the conditions of his pre-trial release [Presentence Report, ¶ 77.]

## IV.  FORFEITURE

The Court already has entered a preliminary order of forfeiture with respect to the forfeited real properties in Plainfield and West Lebanon.  Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure provide that "at sentencing – or at any time before sentencing if the defendant consents – the preliminary order of forfeiture becomes final as to the defendant and must be made a part of the sentence and included in the

judgment." F.R. Cr. Pro. 32.2(b)(3).  Accordingly, at sentencing the government will request that the Court include a reference to the forfeiture when it orally pronounces the defendants' sentences and that the Court issue a written order of forfeiture and attach or otherwise incorporate that written forfeiture order into the judgment and commitment order of each defendant. The government has secured a restraining order and filed lis pendens to protect its forfeitable interests in the two real properties subject to the forfeiture re. [5]

V.  **OTHER SENTENCING ISSUES**

A.  **The Court Has the Authority to Sentence the Defendants**
    **_In Abstentia_**

The Court clearly has authority to sentence the defendants _in abstentia_.  The right to be present for sentencing, although important, is far from absolute and may be waived by, among other things, the act of fleeing.  See generally, Crosby v. United States, 506 U.S. 255 (1993).  Rule 43 of the Federal Rules of Criminal Procedure provides that, in noncapital cases, a defendant waives the right to be present for sentencing when he is voluntarily absent during sentencing. F.R. Crim. Pro.

---

[5]  At sentencing, the forfeiture order will become final only as to the defendants and will remain preliminary as to third parties until the conclusion of the ancillary proceedings.  In this case, one third party – the State of New Hampshire Department of Revenue Administration – has filed an ancillary claim but the deadline for filing claims will not expire until 30 days after the publication period, which will be ongoing on the date of sentencing.  The government and the state Department of Revenue Administration anticipate filing a stipulation of the relative priorities of their interests in the forfeited properties by April 23, 2007, as requested by the Court.

43(c)(1)(B).  The defendants know about their scheduled
sentencing hearings from, among other things, their presentence
reports.  Unless there are significant, presently unknown,
circumstances that preclude them from attending their
sentencings, any absence will be entirely voluntarily and such
absences should not preclude the Court from going forward.  See,
e.g, United States v. Long, 301 F.3d 1095 (9th Cir.  2002);
United States v. Lawrence, 248 F.3d 300 (4th Cir.  2001).

    **B.**    **The Court May Limit the Types of Information the
Parties May Present at Sentencing and the Manner in
which Such Information Is Presented**

Under the Sentencing Guidelines, the Court's obligation to
provide the defendant with an "opportunity to present information
arises ... when a factor is reasonably in dispute."  U.S.S.G. §
6A1.3(a); see also United States v. Montenegro-Rojos, 908 F.2d
425 (9th Cir. 1990).  That limitation is particularly important in
this case because the defendants have not filed any meaningful
objections to the presentence report.  Accordingly, there are
very few, if any, important sentencing factors reasonably in
dispute.  In addition, to the extent the Court deems it
appropriate to allow the defendants to present information, the
Court may in its discretion decline to conduct an evidentiary
hearing and accept the information through alternative means such
as proffer, affidavits or written submission. [6]

---

[6]    Of course, if the pro se defendants in this case are voluntarily
absent from sentencing, as a practical matter there will be no
present to conduct an evidentiary hearing on their behalf.

**VI.    SENTENCING RECOMMENDATIONS**

The government expects to make the following sentencing recommendations:

**1.    Elaine A. Brown**

For the reasons set forth above, the government anticipates recommending the following sentence with respect to defendant Elaine Brown:

- **two upward departures of one level each** for disruption of a governmental function and continuing criminal conduct while a fugitive, resulting in an Offense Level 26 and a Guideline Sentencing Range of 63 to 78 months; and

- a **guideline sentence at the top of the Guideline Sentencing Range, or 78 months**, to reflect the fact that the defendant did not plead guilty, has affirmatively rejected responsibility and all the other aggravating factors discussed above that are not accounted for in the departures;

    **OR, IN THE ALTERNATIVE,**

- **a sentence outside the advisory Guideline Sentencing Range of 78 months** in recognition of the aggravating factors addressed above.

**2.    Edward Lewis Brown**

For the reasons set forth above, the government anticipates recommending the following with respect to defendant Edward Brown:

- **one upward departure of two levels** for disruption of a governmental function and **one upward departure of one level** for continuing criminal conduct while a fugitive, resulting in an Offense Level 27 and a Guideline Sentencing Range of 70 to 87 months; and

- **a guideline sentence at the top of the Guideline Sentencing Range, or 87 months**, to reflect the fact that the defendant did not plead guilty, has affirmatively rejected responsibility and all the other aggravating factors not accounted for in the departures;

   **OR, IN THE ALTERNATIVE,**

- **a sentence outside the advisory Guideline Sentencing Range of 87 months** in recognition of the aggravating factors addressed above.

## VII. CONCLUSION

For the reasons set forth above, the government respectfully requests that the defendants


 be sentenced in accordance with the government's recommendation herein.

Respectfully submitted,

THOMAS P. COLANTUONO
United States Attorney


By:  /s/William E. Morse
     William E. Morse
     D.C. Bar No. 421934
     Assistant U.S. Attorney
     Office of the United States Attorney
     53 Pleasant St., 4th Floor
     Concord, New Hampshire  03301
     (603) 225-1552


Dated: April 21, 2007

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing was sent this date by email to edward1.brown@yahoo.com and by regular U.S. mail, postage prepaid, to Edward Lewis Brown and Elaine A. Brown, each at 401 Center of Town Road, Plainfield, New Hampshire 03781.

/s/ William E. Morse